J-S39019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HASAN GOODEN-REID | : | |
| | : | |
| Appellant | : | No. 1650 MDA 2017 |

Appeal from the PCRA Order September 22, 2017
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000590-2016

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 14, 2018**

Hasan Gooden-Reid (Appellant) appeals *pro se* from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The facts presented at the guilty plea hearing established that Lycoming County Housing Authority received complaints of a foul odor and flies originating from Appellant's apartment, and on July 27, 2015, the Housing Authority asked Appellant to vacate the apartment so that it could be fumigated. Once inside the apartment, Housing Authority workers noticed that the odor was worse and that there was a "sludge like" material in the sink and on the walls. The Housing Authority contacted the Williamsport Bureau of Police after one of the workers, Dennis Ulsamer, discovered a human jaw bone in the garbage outside of Appellant's apartment. The police were also informed that Appellant's girlfriend, Kristina Pope (Victim), frequented the

apartment, but had not be in contact with her caseworker or any other individual in several weeks.

The police contacted Appellant who, after being Mirandized, admitted that he was in a physical altercation with Victim. Appellant stated that Victim had grabbed a knife to protect herself, but he ended up with the knife, and stabbed the Victim in the back at least four times. Appellant placed the Victim's body in a closet in his apartment and disposed of all evidence of the killing in the housing complex's garbage collection area. After being advised by the Housing Authority that the apartment would be fumigated, Appellant placed the Victim's body in the trash where it was later found.

On June 9, 2016, Appellant entered negotiated guilty pleas to third-degree murder and other crimes and was sentenced to 30 to 60 years in prison. He did not file a direct appeal.

On February 2, 2017, Appellant filed a timely *pro se* PCRA petition and on February 14, 2017, the PCRA court appointed counsel to represent Appellant. In his petition, Appellant asserted that plea counsel was ineffective for failing to (1) argue self-defense; (2) show that Appellant's mental illness interfered with his ability to enter a guilty plea that was knowing, voluntary, or intelligent; and (3) file a post-sentence motion or direct appeal. After reviewing Appellant's case file, the notes of testimony, and communicating with Appellant, PCRA counsel determined that no meritorious issues existed and filed a petition to withdraw pursuant to **Turner/Finley**. The PCRA court granted PCRA counsel's petition on September 1, 2017, and simultaneously

issued its Rule 907 notice of intent to dismiss Appellant's petition. Appellant filed a response to the Rule 907 notice on September 20, 2017. On September 22, 2017, the PCRA issued a joint order dismissing Appellant's PCRA petition and memorandum addressing the merits of the claims raised. Appellant filed this appeal on October 24, 2017.[1]

Appellant presents the following issues for review:

1. PLEA COUNSEL WAS INEFFECTIVE WHEN HIS REPRESENTATION FELL BELOW PROFESSIONAL STANDARDS THAT RESULTED IN PREJUDICE. SPECIFICALLY WHERE COUNSEL:

   A. FAILED TO SHOW THAT THE APPELLANT'S MENTAL ILLNESS INTERFERRED WITH THE APPELLANT'S ABILITY

---

[1] Following the denial of his petition on September 22, 2017, Appellant filed a *pro se* notice of appeal docketed in the PCRA court on October 24, 2017 – one day outside the expiration of the 30-day appeal period, October 23, 2017. **See** Pa.R.A.P. 903(a).

> A *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities for purposes of mailing or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of the date that the prisoner deposited the *pro se* filing with the prison authorities.

Pa.R.A.P. 121(a). In this case, Appellant's notice of appeal was stamped as received on October 23, 2017, within the 30-day appeal period, and docketed with the PCRA only one day outside the appeal period. Under these circumstances, we may infer that Appellant placed his notice of appeal into the hands of prison officials before the appeal period expired. **See Commonwealth v. Patterson**, 931 A.2d 710 (Pa. Super. 2007) (panel may avoid quashal where the date of receipt indicates that appellant likely placed a notice of appeal into the hands of prison authorities before expiration of thirty days from the final order).

TO APPRECIATE HIS POSITION IN REGARDS TO HIS GUILTY PLEA.

B. PERMITTED THE APPELLANT TO UNINTELLIGENTLY PLEAD GUILTY WHEN A VIABLE AFFIRMATIVE DEFENSE EXISTED.

C. FAILED TO FILE A POST-SENTENCE MOTION TO MODIFY SENTENCE/NOTICE OF APPEAL IN RELATION TO THE TRIAL COURT'S ABUSE OF DISCRETION PERMITTNG THE APPELLANT TO ENTER A GUILTY PLEA BASED ON HIS COMPETENCY AS WELL AS THE COURT'S SEVERE SENTENCING UNDER THE EXTRAORDINARY CIRCUMSTANCES.

2. WAS PCRA COUNSEL INEFFECTIVE[NESS] DUE TO ABANDONMENT WHEN MERITORIOUS ISSUES EXISTED?

Appellant's Brief at 4 (PCRA court and suggested answers omitted).

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014) (quotations and citations omitted). "To be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2)[.]" *Id.*

Appellant challenges plea counsel's effectiveness. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable

basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." ***Id.*** (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. ***Bomar***, 104 A.3d at 1188.

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." ***Commonwealth v. Moser***, 921 A.2d 526, 531 (Pa. Super. 2007) (quotations and citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Id.*** (quotations and citations omitted). "Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." ***Commonwealth v. Barndt***, 74 A.3d 185, 192 (Pa. Super. 2013) (quotations and citations omitted). "The reasonable probability test is

not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome." *Id.* (quotations and citations omitted).

With respect to valid guilty pleas, this Court has explained:

A valid guilty plea must be knowingly, voluntarily and intelligently entered. The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citations omitted).

In his first issue, Appellant argues that plea counsel was ineffective for failing to "show that Appellant's mental illness interfered with the Appellant's ability to appreciate his position in regards to his guilty plea." Appellant's Brief at 9. In essence, Appellant claims that his guilty plea was invalid because he was mentally ill. Appellant asserts that his "unnatural, robotic answers to the judge's colloquy" demonstrate his lack of competency to fully appreciate the consequences of his guilty plea. *Id.* at 11.

With regard to the voluntariness of a plea, a guilty plea colloquy must "affirmatively demonstrate the defendant understood what the plea connoted

and its consequences." ***Commonwealth v. Lewis***, 708 A.2d 497, 501 (Pa. Super. 1998). Once the defendant has entered a guilty plea, "it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." ***Commonwealth v. Bedell***, 954 A.2d 1209, 1212 (Pa. Super. 2008). Competence to plead guilty requires a finding that the defendant comprehends the crime for which he stands accused, is able to cooperate with his counsel in forming a rational defense, and has a rational and factual understanding of the proceedings against him. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa. Super. 2007).

Here, during the lengthy guilty plea colloquy, the following relevant exchange occurred between the trial court and Appellant:

> [Appellant]: I got mental problems. That's what I got. I'm mentally ill. I've been like this since I was 16.
>
> [The Court]: But you understand that your attorneys have had you tested to find out whether or not those mental problems would not enable you to commit a crime?
>
> [Appellant]: Even if – there's people that can commit crimes that have mental problems in today's society.
>
> [The Court]: I agree. I agree but –
>
> [Appellant]: And they go to serve jail times, too.
>
> [The Court]: But part of my accepting your guilty plea is – is partly a determination as to whether or not you understand what we're talking about.
>
> [Appellant]: I understand what you're talking about.
>
> [The Court]: And you do?

[Appellant]: Yes ma'am. Yes, ma'am.

. . .

[The Court]: Okay. Now, while you're at – while you've been at the county prison have you been taking any medication?

[Appellant]: Yes. Yes, I have.

[The Court]: And then at some point you also – did you go to Torrance State Hospital?

[Appellant]: Yes, ma'am.

[The Court]: And they gave you some medicine out there?

[Appellant]: Yes.

[The Court]: Do you think that medicine, whether it's the kind that you received at Torrance or the medicine that you receive at the county prison, do you think that's interfering with – making it confusing for you to understand –

[Appellant]: No. It's helping me out. It's helping me. Calming me down, making me back to being an ordinary person.

[The Court]: Okay.

[Appellant]: And not a weirdo or a person that likes to stay to himself and doesn't like to communicate with other people.

[The Court]: Okay. So you actually think that you can think more clearly with it?

[Appellant]: Yes, I can. Yes, ma'am.

[The Court]: All right. And over the past – I guess it's been almost a year that you've been on that medication, have you felt pretty consistently able to understand?

[Appellant]: Yes. Yes, I have.

[The Court]: And to think clearly?

[Appellant]: Yes, ma'am.

[The Court]: Okay.

[Appellant]: Yes, I have.

N.T., 6/9/16, at 31, 37-38.

Based on the above testimony, the PCRA court concluded that Appellant was not entitled to relief on his claim of ineffective assistance of plea counsel, and we find no error in this regard. *See Kelley*, 136 A.3d at 1013. Specifically, the PCRA court noted that the guilty plea hearing took more than an hour where all of the charges filed against Appellant were reviewed and Appellant had ample opportunity to consult with counsel. PCRA Court Opinion, 9/22/17, at 5. Moreover, Appellant completed a comprehensive written guilty plea colloquy, indicating that he understood the charges against him. *Id.* at 6. Appellant is bound by the statements he made in open court while under oath, and he may not now assert grounds for withdrawing the plea which contradict the statements. *Turetsky*, 925 A.2d at 876.

In his second issue, Appellant argues that trial counsel was ineffective for failing to raise a self-defense argument. Appellant's Brief at 14. Appellant asserts that trial counsel should have raised the affirmative defense of self-defense to his third-degree murder charge because Victim was the initial aggressor. Appellant argues that "[w]hile it is true that the record states decedent was stabbed in the back, had counsel reviewed the circumstances

of what occurred, there is a reasonable likelihood that rational triers-of-fact would have agreed it was self-defense . . . ." ***Id.*** No relief is due.

Appellant's testimony at the guilty plea hearing refutes his claim. Appellant testified that the decision to plead guilty was his own, and agreed that by pleading guilty, he forfeited his right to raise a claim of self-defense:

> [Appellant's plea counsel]: Do you understand that if you go through this guilty plea you're giving up your right to claim self[-]defense?
>
> [Appellant]: Yes
>
> [Appellant's plea counsel]: And under Pennsylvania Law self[-]defense would be a defense to the charges – some of the charges against you, do you understand you're giving it up?
>
> [Appellant]: Yes.
>
> [Appellant's plea counsel]: And what does that mean to you when I tell you you're giving it up?
>
> [Appellant]: It means I can't pursue that no more.
>
> [Appellant's plea counsel]: You're willing to plead guilty and you give up the right to claim self[-]defense?
>
> [Appellant]: Yes.

N.T., 6/9/16, at 32.

Likewise, our case law is clear that the entry of a guilty plea constitutes waiver of all defenses and defects except claims of lack of jurisdiction, invalid guilty plea, and illegal sentence. ***See Commonwealth v. Roden***, 730 A.2d 995, 997 n.2 (Pa. Super. 1999) ("Upon entry of a guilty plea, a defendant generally waives all defects and defenses except those concerning the validity

- 10 -

of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed."); *see also Commonwealth v. Messmer*, 863 A.2d 567, 571 (Pa. Super. 2004) ("The entry of a guilty plea constitutes a waiver of all defenses and defects except claims of lack of jurisdiction, invalid guilty plea, and illegal sentence."). Thus, there is no support for Appellant's claim that plea counsel should have raised a self-defense claim.

In his third claim, Appellant asserts that plea counsel was ineffective for failing to file a post-sentence motion or direct appeal. Although Appellant acknowledges that he did not advise plea counsel of his wish to file an appeal until after the appeal period had lapsed, Appellant asserts that due to his mental illness, plea counsel should have anticipated his desire and filed an appeal on his behalf. Appellant's Brief at 17-18.

In rejecting his claim, the PCRA court opined:

Just prior to the end of the guilty plea colloquy, the Court advised the [Appellant] of his post sentence rights.

COURT: Do you have any questions for me?

[Appellant]: No, I don't. I'm grateful. I'm grateful. Thank you so much.

COURT: You're welcome. Now you understand –

[Appellant]: Yes, I understand.

COURT: that you would still have the right to file a motion to modify this court's sentence within 10 days or to take an appeal from what's happened here today within 30?

[Appellant]: Yes, I understand.

COURT: [Your attorney] will continue to represent you throughout that time frame.

[Appellant]: Yes ma'am.

COURT: They're your post sentencing rights.

[Appellant]: Yes ma'am.

COURT: Do you have any questions about those rights from me?

[Appellant]: No, I don't.

COURT: Or from me?

[Appellant]: No I don't.

[N.T., 6/9/16,] at 57.

PCRA Counsel also had the opportunity to review the file kept in [Appellant's] case by trial counsel confirming the discussion that was held prior to [Appellant] being transported to state prison; trial counsel had written documentation that [Appellant] wished to waive his post sentence and appeal rights. However, when [Appellant] did wish to take an appeal, his letter was received by his attorney's office past the deadline to file but that he was advised to file a PCRA petition. The court is satisfied that [Appellant] knew his post sentence rights and when he chose to exercise them outside the time set by rule, it was at no fault of his trial counsel.

PCRA Court Opinion, 9/22/17, at 8-9.

With respect to Appellant's third issue, after careful review of the record, the briefs, and the decision of the Honorable Nancy L. Butts, we affirm based on the PCRA court's decision.

- 12 -

Accordingly, we conclude that Appellant's ineffective assistance claims with respect to his guilty plea counsel lack arguable merit, and the PCRA court did not err in dismissing Appellant's PCRA petition.

Finally, Appellant alleges that PCRA counsel was ineffective for failing to raise the issues we disposed of above. Appellant's Brief at 19. Before discussing the merits of this claim, we must first determine if we may reach them. In **Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009), our Supreme Court held:

> [Petitioner's] failure, prior to his PCRA appeal, to argue PCRA counsel's ineffectiveness . . . results in waiver of the issue of PCRA counsel's ineffectiveness. [Petitioner's] attempt to obtain review, on collateral appeal, of an issue not raised in the proceedings below amounts to a serial PCRA petition on PCRA appeal. Although [petitioner] asserts his PCRA appeal was the first opportunity he had to challenge PCRA counsel's stewardship because he was no longer represented by PCRA counsel, he could have challenged PCRA counsel's stewardship after receiving counsel's withdrawal letter and notice of the PCRA court's intent to dismiss his petition pursuant to Pa.R.Crim.P. 907, yet he failed to do so.

*Id.* at 880 n. 4; *see also Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014 (*en banc*) (holding that "claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal.").

Here, Appellant failed to challenge PCRA counsel's withdrawal after he received the no merit letter or after the PCRA court filed its notice of intent to dismiss. More importantly, Appellant failed to raise his issue concerning PCRA counsel in his Pa.R.A.P. 1925(b) statement of errors. As a result, the PCRA court did not have the opportunity to address Appellant's claim, and it is

- 13 -

waived where, consistent with **Pitts** and **Henkel**, Appellant has failed to preserve this issue for review.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/18